PEOPLE v DeGROOT

Docket No. 55077. Submitted March 3, 1982, at Grand Rapids.—
Decided May 21, 1982. Leave to appeal applied for.

John K. DeGroot was convicted of authorizing or recommending
public assistance to an ineligible person, Kent Circuit Court,
George R. Cook, J. DeGroot was employed by the Kent County
Department of Social Services. He became acquainted and
moved in with Betty J. Gardner, a recipient of public assis-
tance. Gardner traded in her mobile home and purchased a
larger one, which transaction required a redetermination of her
eligibility for over-ceiling housing assistance payments. The
case was assigned to DeGroot who reported that Gardner met
the qualifications for over-ceiling payments. The additional
payments were approved based on DeGroot's recommendation.
DeGroot appeals, alleging that the trial court erred in denying
his motion for a directed verdict of acquittal. *Held:*

1. The elements of the felony of which the defendant was
convicted are (1) the defendant is an officer or employee of a
county, city or district department of social welfare, (2) the
defendant authorized or recommended relief to a person, (3)
that person was known by the defendant to be ineligible or to
have fraudulently created his or her eligibility, and (4) the
difference between the lawful amount of assistance and the
amount actually received is over $500.

2. There was no evidence presented that Gardner was not
eligible for the assistance she received or that the amount of
assistance received was in excess of $500 more than a lawful
amount. Therefore, two of the elements of the charged offense
were not proven and the motion for a directed verdict should
have been granted.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 483, 552, 553.
[2] 79 Am Jur 2d, Welfare Laws § 111.
Criminal liability in connection with application for, or receipt of,
public relief or welfare payments. 94 ALR2d 421.

1. CRIMINAL LAW — DIRECTED VERDICT.

    A trial judge, when ruling on a motion for a directed verdict of acquittal, must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could find that the essential elements of the crime are proven beyond a reasonable doubt.

2. SOCIAL SERVICES — PUBLIC ASSISTANCE — CRIMINAL LAW.

    The elements of the felony of authorizing or recommending public assistance to an ineligible person are (1) the defendant is an officer or employee of a county, city or district department of social welfare, (2) the defendant authorized or recommended relief to a person, (3) that person was known by the defendant to be ineligible or to have fraudulently created his or her eligibility, and (4) the difference between the lawful amount of assistance and the amount of assistance actually received is over $500 (MCL 400.60[1]; MSA 16.460[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, *Carol S. Irons,* Chief Appellate Attorney, and *Henry S. Emrich,* Assistant Prosecuting Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

PER CURIAM. Defendant was convicted by a jury of authorizing or recommending public assistance to an ineligible person, contrary to MCL 400.60(1); MSA 16.460(1). He was sentenced to two to four years in prison. Defendant appeals as of right.

In 1977 defendant was employed as a housing specialist with the Kent County Department of Social Services. His duties involved examining the circumstances surrounding changes in or problems with residences of public assistance recipients.

    * Circuit judge, sitting on the Court of Appeals by assignment.

Essentially, he verified the facts as claimed by recipients and then made recommendations to the assistance payments workers. During the course of his employment, he became acquainted with Betty Jean Gardner, a public assistance recipient, and moved in with her sometime in 1977. In June or July of 1977, Gardner traded in the mobile home in which she had been residing and purchased a new, larger one. The transaction required a redetermination of her eligibility for over-ceiling housing assistance payments by the assistance payments worker assigned to her case. The standard housing allowance was $110 per month. However, an allowance of up to $210 per month, *i.e.,* over-ceiling assistance, was possible if the recipient either had made 12 consecutive monthly payments on the residence or had a 10% equity in the residence. The case was referred to defendant in order that he check out the trade-in and purchase values. Defendant reported to the assistance payments worker that the trade-in and purchase values checked out properly. Subsequently, the assistance payments worker's supervisor approved over-ceiling assistance payments to Gardner based upon defendant's recommendation. Sometime thereafter, defendant and Gardner were married.

Defendant raises several issues on appeal, one of which is dispositive. At the close of the prosecution's case in chief, defendant moved for a directed verdict and the motion was denied. The standard of review is well settled:

"[T]he trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of

the crime were proven beyond a reasonable doubt."
(Citations omitted.) *People v Hampton,* 407 Mich 354,
368; 187 NW2d 404 (1979).

The statute under which defendant was charged
and found guilty reads in pertinent part as follows:

"[A]ny officer or employee of a county, city or district
department of social welfare who authorizes or recom-
mends relief to persons known to him to be ineligible or
to have fraudulently created their eligibility; * * *
shall, if the amount involved shall be of the value of
more than $500.00, be deemed guilty of a felony, and
upon conviction shall be punished as provided by the
laws of this state. The amount involved as used in this
subsection shall be defined as the difference between
the lawful amount of assistance or aid and the amount
of assistance or aid actually received." MCL 400.60(1);
MSA 16.460(1).

The elements of the offense are: (1) the defendant
is an officer or employee of a county, city or
district department of social welfare; (2) who au-
thorized or recommended relief to a person or
persons; (3) known to him to be ineligible or to
have fraudulently created their eligibility; and (4)
the amount involved, *i.e.,* the difference between
the lawful amount of assistance and the amount of
assistance actually received, is over $500.

The prosecution introduced at trial an assistance
payments manual which set forth the official
guidelines for determining welfare eligibility. One
item of that manual deals specifically with shelter
and over-ceiling assistance payments while an-
other item deals with divestment or transfer of
property. The former item sets forth exclusive
guidelines for receiving over-ceiling assistance pay-
ments. One of those guidelines is that the client
has at least a ten percent equity in the residence.

Satisfying any one of the guidelines suffices to secure over-ceiling assistance payments. Further, in order to be eligible for over-ceiling assistance payments, a client needs prior authorization from the county department of social services to move from one residence to another unless (1) the client meets one of the conditions for granting such payments and (2) such payments would otherwise have been approved. On the other hand, the latter item in the manual is based upon the following statutory language:

"(1) Aid to dependent children may be provided to a dependent child or family who, in addition to the requirements under section 56 meets the following:

* * *

"(c) Has not made an assignment or transfer of any real or personal property within 1 year immediately preceding the date of application, or has not made an assignment or transfer after the granting of assistance, for the purpose of qualifying for assistance or for the purpose of increasing the amount of assistance to be received under this act." MCL 400.56g; MSA 16.456(7).

The manual states that a "property transfer" by a client must be given prior approval by the department of social services in order to protect the client and prevent "divestment". "Property divestment" is prohibited and results in ineligibility for assistance. "Divestment" occurs only when a transfer is undertaken with the intent to secure or increase assistance payments.

The prosecution argues the evidence on the element of eligibility was sufficient to support the conviction. In support of this position the prosecution points to the evidence introduced with respect to defendant's acting in violation of civil service and department of social services regulations deal-

ing with conflict of interest. Additionally, defendant not only used a false name in connection with Ms. Gardner's case but failed to advise the department of social services of facts with respect to his residing with Ms. Gardner and his assisting Ms. Gardner in buying the new mobile home. While such evidence might have an important bearing on defendant's continued employment with the department of social services, the proofs were not sufficient to support the conviction.

Evidence was presented on the first two elements enumerated above, (1) defendant's employment status and (2) the recommendation of relief. However, the evidence was very limited on the other two elements. The exclusive eligibility guidelines for over-ceiling assistance payments are nondiscretionary. There was no testimony that such relief could be denied when one of the guidelines was satisfied, although several department of social services supervisors stated that, if they had known all the facts, such aid would have been denied in this case. Further, prior approval for the move was unnecessary, as it was undisputed that Gardner met the ten percent equity guideline and there was no evidence presented of how or why over-ceiling assistance payments would not otherwise be granted. One of the department of social services investigators specifically stated that he found no fraud on Gardner's part. The prosecution failed to present any evidence that Gardner was ineligible for the assistance she received. Consequently, the trial court erred by denying defendant's motion and the charge against him must be dismissed. *People v Killingsworth,* 80 Mich App 45, 50-54; 263 NW2d 278 (1977).

There also was no evidence that the amount involved was over $500. Although one of the de-

partment of social services investigators claimed that the "divestment" amount was $1,571, there was no evidence that a "divestment" had occurred. Undoubtedly, there was a property transfer without prior authorization. However, it was not shown that Gardner undertook such with the intent to increase her assistance payments, *i.e.,* to create a "divestment". Calculating "divestment" on the difference between a trade-in value and a subsequent resale price was questionable, since it was not shown that the trade-in price was not fair because the dealer resold the old home for $1,571 more than the trade-in allowance. To reason in this manner would mean that even if one sold directly to another user, any subsequent resales could result in "divestment" if the original sale price was lower than any of the subsequent sale prices, regardless of whether the original seller received a fair price. Further, the statute, MCL 400.60(1); MSA 16.460(1), defines the amount involved "as the difference between the lawful amount of assistance or aid and the amount of assistance or aid actually received". Thus, the "divestment" analysis is not relevant since it does not involve the difference in aid.

It was never shown that Gardner was not entitled to the increased assistance payments. Thus, there could be no difference between the lawful amount and the amount actually received. The trial court erred by denying defendant's motion and the charge against him must be dismissed.

Reversed.